# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **JEFFREY ALLEN SINYARD,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:11-cv-01398-KOB-JEO** |
| **WARDEN MITCHIM and THE** ) | |
| **ATTORNEY GENERAL OF THE** ) | |
| **STATE OF ALABAMA,** ) | |
| ) | |
| Respondents. ) | |

## <u>REPORT AND RECOMMENDATION</u>

The petitioner, Jeffrey Allen Sinyard,[1] filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for reckless murder and second-degree assault in the Circuit Court of Lauderdale County and his resulting concurrent sentences of life imprisonment. (Doc. 1 at 2).[2] Sinyard asserts four grounds for relief in his petition, amended petition, and supplemental brief: (1) prosecutorial misconduct before the grand jury; (2) a violation of his substantive due process rights because "the entire-petit [j]ury pool was, in all likelihood, prejudiced" against him by "prejudicial verbage [sic] stated by a potential juror;" (3) ineffective assistance of trial counsel; and, (4) ineffective assistance of appellate counsel. (Doc. 1-1 at 5, 12, 15, 23; Doc. 5, and Doc. 9). Upon consideration, the court finds that the

---

[1] While the petitioner's correct name is "Sinyard," it is also spelled "Siniard" in various places in the record.

[2] References herein to "Doc.____" are to the numbers assigned to each document by the Clerk of the Court, and "Ex." refers to the exhibits attached to those documents. References to "R. ___" and "Trial Tr. ___" are to the trial court record in the original criminal proceedings found at documents 14-1 to 14-5 in the electronic record of this court.

petition is due to be denied.

## BACKGROUND

### Procedural History

On December 14, 2007, a Lauderdale County jury convicted Sinyard of reckless murder and second-degree assault. (Doc. 14-5 at 50, 63-64 (Ex. 1)). On March 13, 2008, the Circuit Court of Lauderdale County sentenced him to concurrent terms of life imprisonment under the Alabama Habitual Felony Offender Act. (*Id.* at 75). Sinyard moved for a new trial and an evidentiary hearing, but the circuit court denied both motions. (Doc. 14-1 at 86).

On June 27, 2008, Sinyard appealed his convictions to the Alabama Court of Criminal Appeals. (Doc. 14-6 at 76 (Ex. 2)). Sinyard's direct appeal raised the following issues for review: (1) denial of his motion for a new trial without a hearing; (2) the jury's verdicts were inconsistent; (3) the sentencing violated his constitutional rights in sentencing him under the Alabama Habitual Offender Act; (4) the trial court failed to properly strike a juror for cause; (5) insufficient evidence; and (6) the speed with which the jury deliberated – fifteen minutes. (*Id.* at 11, 58). On May 22, 2009, the Alabama Court of Criminal Appeals affirmed Sinyard's convictions and sentence. (Doc. 14-8 at 19 (Ex. 4)). On June 4, 2009, Sinyard applied for rehearing, which the Alabama Court of Criminal Appeals overruled. (Doc. 14-10 (Ex. 6)).

Sinyard next petitioned for a writ of *certiorari* in the Alabama Supreme Court, arguing that the trial court and the Court of Criminal Appeals "did not heed applicable appellate decisions" as to the four issues he raised on appeal. (Doc. 14-11 at 4, 6-11 (Ex. 7)). On September 11, 2009, the Alabama Supreme Court denied the petition and certified the judgement. (Doc. 14-12 (Ex. 8)).

On August 31, 2010, Sinyard filed a Rule 32 petition in the Circuit Court of Lauderdale County, challenging his convictions on the basis of four general claims: (1) prosecutorial misconduct; (2) violations of his substantive due process rights; (3) ineffective assistance of counsel; and (4) ineffective assistance of appellate counsel. (Doc.14-14 at 18 (Ex. 10)). On November 5, 2010, that court summarily dismissed the Rule 32 petition. (Doc. 14-16 at 46-47 (Ex. 10)). Sinyard appealed the dismissal to the Court of Criminal Appeals, reasserting the following claims from his Rule 32 petition: (1) prosecutorial misconduct because the "prosecutor had [him] unlawfully indicted-via, essentially perjury and deception;" (2) ineffective assistance of trial counsel because "[Sinyard's] lawyer was plainly and shockingly ineffective;" and (3) ineffective assistance of appellate counsel because counsel "failed to raise such obvious grounds" for relief. (Doc.14-17 at 30 (Ex. 11)).

On March 18, 2011, the Court of Criminal Appeals affirmed the judgement of the circuit court. (Doc. 14-19 at 15 (Ex. 13)). In affirming the dismissal of the petition, the Court of Criminal Appeals first addressed Sinyard's claims of prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel and found no grounds for relief on those claims. (*Id*.) Next, the Court of Criminal Appeals addressed Sinyard's "numerous claims or vague statements" where he attempted to argue "the circuit court's denial of Sinyard's Rule 32 petition amounted to the denial of his right to habeas corpus" and found those claims did not entitle Sinyard to any relief. (*Id*. at 14). Finally, the Court of Criminal Appeals deemed a number of the claims originally raised in Sinyard's Rule 32 petition as abandoned because Sinyard failed to raise these claims on appeal. (*Id*. at 15).

Sinyard subsequently applied for rehearing, which the Court of Criminal Appeals

overruled on April 8, 2011.  (Doc. 14-21 (Ex. 15)).  Significant here, Sinyard did not seek *certiorari* review by the Alabama Supreme Court and, therefore, the Court of Criminal Appeals certified the judgment on Sinyard's post-conviction proceedings on April 27, 2011.  (Doc.14-22 (Ex. 16)).

After the Court of Criminal Appeals denied his application for rehearing, but before that court certified its judgment, Sinyard filed the instant petition on April 20, 2011.[3]  (Doc. 1 at 1). He alleges four claims:

> (1) prosecutorial misconduct by misleading the Grand Jury; withholding exculpatory evidence from the Grand Jury for the purpose of gaining an indictment; promoting perjury of witnesses before the Grand Jury; improperly seeking indictment, thus voiding the Court's jurisdiction; and, failing to provide an in camera review of the Grand Jury record;
>
> (2) violation of substantive due process rights because "the entire-petit Jury pool was, in all likelihood, prejudiced" against the petitioner because of "prejudicial verbiage stated by a potential juror,"and the trial judge appeared to participate in the prejudicial conversation by agreeing with the prospective juror and failing to set a new trial date;
>
> (3) ineffective assistance of counsel by failing to do all things requisite in defending the petitioner, including a failure to fully investigate the State's case and evidence, failing to depose or interview all witnesses, and failing to assert prosecutorial misconduct and move for dismissal of the indictment; failing to move for a new trial after discovering that the venire was contaminated by a potential juror's prejudicial statements about the petitioner; failing to move for an acquittal either after the State could not prove a *prima facie* case of assault and murder; failing to move for an acquittal after there was a variance between the indictment and the alleged facts against the petitioner; failing to defend his client "masterfully"; and failing to use all the facts and law, including an assertion that one victim did not in fact die from a gunshot wound but instead from use of illegal drugs, to defend the Petitioner; and,
>
> (4) ineffective assistance of appellate counsel by failing to raise a viable

---

[3]This is the date it was placed in the mail at the prison.  *See Houston v. Lack*, 487 U.S. 266 (1988) ("the mailbox rule").

appeal based on facts supplied by the petitioner and failing to raise proper grounds and supporting facts in order to obtain relief.

(Doc. 1-1 at 5-24).  Additionally, Sinyard appears to argue the state courts unreasonably adjudicated his claims and his counsel's ineffectiveness perpetuated an allegedly unreasonable adjudication.  (Doc. 1-1 at 9-11, 14, 16, 19).

## Offense Conduct

As noted by the Alabama Court of Criminal Appeals,[4]

> The State's evidence tended to show the following: Mustapha Cunningham testified that on the evening of May 12, 2007, he was in Lauderdale County, at the home of Don Nance, to visit his father, the victim, Don Cunningham.  As Mustapha and Nance made plans for the night, Sinyard and his companions arrived a[t] Nance's residence.  Sinyard demanded that one of the tow men buy a charcoal grill from him.  When both men refused his offer, Sinyard became angry and pushed the grill off the porch.  Sinyard left the Nance residence and did not return until the following day when the incident occurred.
>
> Kimbrell Wigginton testified that on May 13, 2007, he, along with Dustin Wigginton, Darren Wigginton, and Sebastian Young, went swimming with Sinyard.  He testified that Sinyard and Darren Wiggington [sic] were drinking.  After swimming, the younger boys thought they were going to play basketball, but instead they rode with Sinyard in his truck, driven by Dusting Wigginton, to a dead-end near Don Nance's residence.  Sinyard and Darren Wigginton got out of the truck.  Sinyard was armed with a .22 caliber revolver and Darren Wigginton had a stick.  Kimbrell testified that he was told by Dustin Wigginton ot lie down in the bed of the truck because there might be gunfire, Kimbrell testified that he heard Sinyard arguing about what appeared to be a drug-deal-gone-bad.  Shortly thereafter, he heard gunshots.  Sinyard and Darren Wigginton ran back to the truck and they fled the scene.  Kimbrell testified that Sinyard bragged that he "reckoned [he] killed them n_____."  He testified that Sinyard then threatened to tie jumper cables to their testicles and electrocute them if they told on him.  (R. 185, 224, 236).
>
> Willie Lewis Woods testified that prior to the arrival of Sinyard at Don Nance's residence, several people including Don Nance, Don Cunningham,

---

[4]The undersigned has examined the entire trial transcript and finds that it fully supports the factual summary prepared by the Alabama Court of Criminal Appeals.  (*See* Doc. 14-1 through 14-5).

Mustapha Cunningham, Derek Smith, and himself, had been socializing in Nance's front yard. Woods was resting in his van, when he heard a vehicle drive up. Sinyard pulled on his van door, pointed a revolver at Woods, and instructed him to get out of the van. Sinyard demanded money from Woods. When Woods told him that he did not have money, Sinyard ordered him to call for Nance, who was inside his residence at the time. Woods yelled for Nance and began to walk toward the residence. Winyard ordered Woods to sit down near Derek Smith, who was sitting in a chair. Don Cunningham was kneeling on the ground nearby. Woods testified that after firing a ringing cell phone that was laying on the ground, Sinyard, turned toward Smith, placed his gun at Smith's neck and began firing. Woods testified that he heard a total of six gunshots. He further testified that he believed that the gunfire that struck Smith struck Don Cunningham as well.

Derek Smith testified that he was sitting in a chair in Nance's front yard when Sinyard drove up. He observed Sinyard walk to Wood's van and wake him. Sinyard pulled out a pistol, demanded money, and asked Don Cunningham to go inside and get Don Nance. Sinyard then ordered Don Cunningham to sit down. Smith testified that Sinyard then walked over to Smith's left side and put a gun to Smith's neck. The gun fired and Smith jumped. Smith testified that he "heard like a moan and there was Don Cunningham. He kneeled over and teetered to the side[.]" (R. 316) Cunningham was "[j]ust mumbling." (R. 318) Sinyard ran from the scene, firing two more shots in the air. Smith testified that, as a result of Sinyard's actions, he sustained an entrance and exit would to his neck, and a bullet also went through his arm. He received stitches as a result of the injuries and was treated with antibiotics.

Paramedic Douglas Hartley arrived at the scene of the shooting to find the two victims. Smith was stabilized and transported to the hospital; Cunningham was air-lifted to Huntsville Hospital, where he died nine days later from a gunshot wound to his head.

Investigatory Richard Richey, with the Lauderdale County Sheriff's Department, testified that he met with Jimmy Sinyard, the father of the [petitioner]. He testified that Jimmy Sinyard took him to a bridge, where the gun had been hidden by Jeffrey Sinyard. Richey testified that the bullet recovered from Cunningham's brain was a .22 caliber bullet and Sinyard's gun was a .22 caliber revolver.[5]

Dr. Emily Ward, a forensic scientist with the Alabama Department of

---

[5] This evidence was also corroborated by "jail calls" where the petitioner gave his father specific instructions regarding the location of the gun. (Trial Tr. at 277-78).

> Forensic Sciences, testified that she performed the autopsy on Cunningham and removed a .22 bullet from his brain. Although the bullet was too damaged to allow a conclusive determination regarding whether it was fired from Sinyard's gun, the bullet was a .22 caliber and Sinyard's gun was a .22 revolver. Dr. Ward further testified that Cunningham's death was a result of the .22 caliber gunshot wound to his head.

(Doc. 14-8 (Ex. 4) at 13-17).

## DISCUSSION

### Exhaustion/Procedural Default

#### A. Generally

In federal habeas cases the threshold issue concerns whether the petitioner exhausted all available state remedies. If a petitioner did not exhaust all available state court remedies, the court will not consider an application for writ of habeas corpus. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 8 38, 842 (1999); *Georgalis v. Dixon*, 776 F.2d 261, 262 (11th Cir. 1985); *Walker v. Zant*, 693 F.2d 1087, 1088 (11th Cir. 1982). The exhaustion requirement is necessary "to effect a proper balance between the roles of state and federal judicial institutions in protecting federal rights." *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir. 1979). In furtherance of the strong federal policy that federal courts should not unduly or prematurely interfere with state court proceedings, the exhaustion requirement mandates that federal courts provide states the initial "opportunity to pass upon and correct errors of federal law in the state prisoner's conviction." *Fay v. Noia*, 372 U.S. 391, 438 (1963).

Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the questions presented." *Rose v. Lundy*, 455 U.S. 509, 518

n.9 (1982). Until the petitioner fully and fairly presents the claim to the state courts for consideration, the exhaustion requirement is not met. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Heath v. Jones*, 863 F.2d 815, 818 (11th Cir. 1989). For a petitioner to properly exhaust his claims he must fairly present all legal issues raised in his federal petition to the state's highest court through direct appeal or collateral review. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

In this case, even assuming that Sinyard adequately presented all of his claims to the trial court, and on appeal to the Alabama Court of Criminal Appeals,[6] it is undisputed that Sinyard failed to present these claims in a writ of *certiorari* to the Alabama Supreme Court. (*See* Doc. 16). His first two claims, prosecutorial misconduct at the grand jury stage and violations of due process at the jury selection stage, could have been, but were not presented during the direct appeal process to the Alabama Supreme Court. His last two claims, ineffective assistance of trial and appellate counsel, could have been, but were not presented during collateral review to the Alabama Supreme Court.

The law is well-established that Sinyard's failure to present each of these claims through an entire round of review by the state courts renders his claims procedurally defaulted. *See O'Sullivan*, 526 U.S. at 838 (holding because petitioner failed to fairly present claims for discretionary review to the highest available state court, his habeas claims were unexhausted and procedurally defaulted because the state remedy was no longer available); *McNair v. Cambell*,

---

[6] The State contends that Sinyard may have not adequately presented his claims to the trial court or Alabama Court of Criminal Appeals. (Doc. 14 at 18). Even if the court construes the petitioner's claims broadly at the trial court and Alabama Court of Criminal Appeals, the petitioner nevertheless failed to complete the entire review process by presenting his claims to the Alabama Supreme Court.

416 F.3d 1291 (11th Cir. 2005). Accordingly, the court is precluded from conducting any further substantive review.

A petitioner may overcome a procedural default in one of two ways. First, he may overcome the procedural bar by showing "cause" for the default *and* "prejudice attributable thereto." *Murry v. Carrier*, 477 U.S. 478, 485 (1986). Second, in an "extraordinary" case, a federal court may consider a procedurally defaulted claim in the absence of a showing of cause for the procedural default where a fundamental miscarriage of justice has "'probably resulted in the conviction of one who is actually innocent.'" *Smith v. Murray*, 477 U.S. 527, 537 (1986) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). In this context, "'[a]ctual innocence' means factual innocence, not mere legal innocence." *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir.) (*per curiam*) (citation omitted), *cert. denied*, 543 U.S. 891 (2004).

### B. Cause & Prejudice[7]

To establish cause for a procedural fault Sinyard must show that "something external to the petitioner, something that cannot fairly be attributed to him[,] ... 'impeded [his] efforts to comply with the State's procedural rule.'" *Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912, 922 (2012) (internal citations omitted). Sinyard appears to argue that because he did not have a lawyer during the collateral proceedings, he was unaware of the timing deadlines and procedures and that it took him eleven months and twenty days to get the help of a fellow inmate to file his current petition. (Doc. 16 at 1,5). However, the absence of an attorney or other advice from

---

[7] This case is not included in the narrow exception to procedural bars outlined in the Supreme Court's opinion in *Martinez v. Ryan*, which ruled that "inadequate assistance of counsel at *initial-review* collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. 1309, 1315 (2012) (emphasis added). Because Sinyard's procedural default did not occur during the initial-review proceeding but later in his failure to appeal his Rule 32 petition to the Alabama Supreme Court, he does not qualify under the *Martinez* exception.

inmates generally cannot constitute cause for procedural default.[8]  *See Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir. 1990).  Further, a petitioner's own ignorance of the law and state procedures does not establish cause for a procedural default.  *Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir. 1990).  Instead, the Supreme Court has suggested that cause should ordinarily turn on an objective factor external to the petitioner.  *See Murray*, 477 U.S. at 488.

Sinyard also appears to argue that it was futile to present his claims to the Alabama Supreme Court because "it would have resulted in petitioner missing his filing deadline for federal writ of habeas corpus, also his claims rest solely upon federal law."  (Doc. 16 at 2).  "[I]f it is clear from state law that any future attempts at exhaustion [in state court] would be futile" under the state's own procedural rules, a court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect."  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citation omitted).  Here, however, Sinyard has not demonstrated a sufficient basis for believing that presenting his claims to the Alabama Supreme Court would have been futile.  Instead, he incorrectly asserts that he would have missed his filing deadline for the instant petition.  The limitations period to file a habeas petition in federal court is tolled during the pendency of state post-conviction proceedings.  *See* 28 U.S.C. § 2244(d)(2).  Additionally, Sinyard's claims of "federal law" are alleged constitutional violations, which could have been properly raised before the Alabama Supreme Court.  Indeed, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of a State's established appellate process, including review by the state court's of last

---

[8] Except as now permitted by *Maritnez*.

resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (citing *O'Sullivan*, 526 U.S. at 845).

The petitioner also notes at one point in his responsive pleading to the respondents' answer that he is not able to read. (Doc. 16 at 5). However, that also does not excuse his failure to raise these issues in the State courts. The record is replete with numerous, lengthy filings in the State courts raising and arguing various matters. His failure to seek *certiorari* review is not excusable under the circumstances. Thus, this deficiency is insufficient to show cause to justify relief from the procedural default.

Finally, Sinyard must also show the events in his case not only created the possibility of prejudice, but that they worked to his actual and substantial disadvantage. *United States v. Frady*, 456 U.S. 152 (1982). After reviewing the record, the court finds Sinyard failed to show prejudice sufficient to overcome his procedural default as to any claim. First, as to his claim of prosecutorial misconduct before the grand jury, his allegations are conclusory and unsupported. Second, as to the jury claim, the transcript reveals the following responses from a juror concerning his knowledge of the petitioner:

> A.   .... I was teaching at Rogersville. Also Lauderdale County High School and I taught his sister. I didn't have the Defendant in class but I taught his sister. Also [I] had a store at Bethel after I retired from teaching. I had some merchandise come up missing. I felt strongly that Mr. Siniard [sic] and his brothers might be involved in that.
>
> Q.   .... is that going to cause you some uncomfortability [sic] sitting on the case having that experience?
>
> A.   Might do it. I don't know.

   Q. Okay.  Thank you.

(Trial Tr. at 47).  Thereafter, the court struck the juror for cause.  (*Id*. at 106).  Nothing demonstrates that this unfairly prejudiced the petitioner.  His speculation to the contrary is insufficient.  Lastly, as to the ineffectiveness of counsel claims, the volume of conclusory challenges is significant, however, the evidence of prejudice is void.[9]  The petitioner is entitled to no additional consideration of his substantive claims.

  **C.** **Actual Innocence**

  A second way a petitioner may overcome a procedural default is by showing the existence of a fundamental miscarriage of justice in the conviction of one who is actually innocent.  Sinyard appears to argue that the actions of the prosecutor and his lawyers "caused a wrongful conviction of one who is actually innocent."  (Doc. 16 at 3, 7).  Importantly, the "miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998).  Sinyard must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition.  *Calderon*, 523 U.S. at 559 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  A petitioner must provide reliable evidence so that there is "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."  *Schlup v. Delo,* 513 U.S. 298, 317 (1995).

  Here, Sinyard contends that the new evidence consists of the following: (1) his eye-

---

[9]The conclusory nature of the claims is particularly evident with respect to the claims of ineffective assistance of counsel on appeal.

witness testimony; (2) "medical records showing alleged victim Smith was not treated for a gun-shot injury thus he was committing prosecutor-promoted perjury about asserting petitioner shot him;" and (3) "medical records showing that the alleged murder victim Cunningham had died of an illegal-drug overdose while recovering from a gun-shot injury." (Doc. 16 at 8). Based on the evidence provided in the record, particularly the trial transcript, the court is unpersuaded that this alleged new evidence undermines his convictions. Sinyard's alleged eye-witness testimony is self-serving and, therefore, afforded little weight in light of contradictory testimony. Additionally, Smith testified he felt the gun barrel on his neck as it went off and he was shot. (Trial Tr. at 315, 318). Thus, the alleged medical records concerning Smith are rebutted by the direct testimony of Smith that Sinyard shot him and Cunningham. Lastly, the medical records regarding Cunningham do show the presence of marijuana and cocaine in his system at the outset of his admission to the hospital. (Trial Tr. at 361). Nothing, however, demonstrates that they were even a contributing factor in his death. After reviewing the record evidence and Sinyard's alleged new evidence, the court finds that Sinyard has not demonstrated that "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned recommends that the petition be **dismissed with prejudice** pursuant to 28 U.S.C. § 2254.

Any party may file specific written objections to this report within fifteen (15) days of the date it is filed in the office of the Clerk. Any objections filed must specifically identify the

findings in the magistrate judge's recommendation to which the objections pertain. Frivolous, conclusive, or general objections will not be considered by the district court. Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the district court of issues covered in the report and shall bar the party from a from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). It is not necessary for the petitioner to repeat his legal arguments. As to the facts, if the petitioner does respond, he should limit himself to addressing the statements of fact contained in the report an recommendation to which he objects; the filing of objections is not the proper vehicle by which to make new allegations or present additional evidence. A copy of the objections must be served upon all other parties to the action.

The Clerk is **DIRECTED** to serve a copy of this Report and Recommendation upon the petitioner and counsel for respondents.

**DONE**, this 13th day of June, 2012.

_____
**JOHN E. OTT**
United States Magistrate Judge